J-S62032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| J.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|------|------|
| Appellant | |
| v. | |
| J.J. | |
| Appellee | No. 2254 MDA 2015 |

Appeal from the Order Entered December 10, 2015
In the Court of Common Pleas of Berks County
Civil Division at No(s): 15-2945

BEFORE:  GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED SEPTEMBER 09, 2016**

Appellant, J.D. ("Mother"), appeals from the order entered in the Berks County Court of Common Pleas, which awarded the parties shared legal custody of their minor child, N.J. ("Child"), and awarded primary physical custody of Child to Appellee, J.J. ("Father"), subject to Mother's periods of partial physical custody.  We affirm.[1]

_____

[1] We have made every effort to decide this Children's Fast Track case expeditiously.  ***See In re T.S.M.***, 620 Pa. 602, 618 n.21, 71 A.3d 251, 261 n.21 (2013) (explaining Superior Court must ensure that Children's Fast Track cases do not linger and must give such cases priority in circulation of and voting on proposed decisions).  The following delays, however, occurred in this case.  Mother's counsel failed to timely file a brief, so this Court issued a *per curiam* order on March 10, 2016, directing counsel to file a brief and reproduced record within 14 days.  Instead, counsel filed an application for extension of time on March 22, 2016, claiming Mother had not yet paid the remaining balance for the transcript of the custody trial, and counsel
*(Footnote Continued Next Page)*

In its December 10, 2015 Decision & Final Custody Order, the trial court accurately set forth the relevant facts and procedural history of this case. Therefore, we will only briefly summarize the facts and procedural history most relevant to this appeal. Mother and Father never married but had a romantic relationship lasting approximately ten years before they separated. Prior to separation, the parties lived together in New York City. Child was born in December 2009. When Child was 1½ years old, the parties separated; and Mother moved to Reading, Pennsylvania. After Mother moved, the parties had an informal custody arrangement in which Mother exercised primary physical custody of Child. Father exercised partial physical custody throughout the year, and enjoyed custody of Child for the majority of the summer months. Once Child reached school age, the parties' ability to co-parent began to deteriorate.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

could not file a brief as a result. On March 29, 2016, this Court ordered counsel to file within 14 days proof of payment for the outstanding transcript and a certification that counsel notified her client of this Court's order. This Court stated that Mother's compliance would result in a new briefing schedule with no further extensions allowed. Counsel complied with the order, Mother paid the outstanding balance, and the Prothonotary issued a new briefing schedule. Counsel electronically filed Mother's reproduced record on May 5, 2016 (the deadline under the new briefing schedule), but she failed to file the requisite paper copies. Additionally, counsel did not file an appellate brief. Consequently, on May 27, 2016, this Court ordered counsel to file paper copies of the reproduced record within seven days; and remanded the matter to the trial court for 30 days to determine whether counsel had abandoned Mother by failing to file a brief. Counsel filed paper copies of the reproduced record on June 3, 2016, and an appellate brief on June 7, 2016. The Prothonotary's office closed out the remand based on counsel's eventual submission of the relevant documents.

On March 12, 2015, Mother filed a custody complaint at docket No. 15-2945. Father also filed a custody complaint at a different docket number. The trial court ultimately dismissed Father's complaint, and docket No. 15-2945 was used going forward. The parties attended a custody conciliation conference before a custody master on May 15, 2015. On May 21, 2015, the custody master issued a recommendation for the parties to share legal custody and for Father to have primary physical custody of Child, subject to Mother's periods of partial physical custody. The custody master drafted a proposed order outlining each parent's custodial time. Mother filed exceptions but at the incorrect docket number. Consequently, the court entered the master's proposed custody order as a final order on June 17, 2015, granting Father primary physical custody of Child. On July 1, 2015, the court vacated its June 17, 2015 order, after learning Mother had intended to file exceptions in this case. Mother filed her exceptions at the correct docket number on July 10, 2015.

On November 20, 2015, the court held a *de novo* custody trial. At the conclusion of trial, the court acknowledged the upcoming Thanksgiving holiday and stated its intent to make a custody decision the following week. On November 23, 2015 (before the Thanksgiving holiday), the court entered an order affirming the master's recommendation to award the parties shared legal custody and to give Father primary physical custody of Child, subject to Mother's periods of partial physical custody. The court attached a copy of

the master's proposed custody order, effective as of that date. The court also attached as an appendix a "Code of Conduct" for parties involved in custody disputes. On December 10, 2015, the court issued a Decision & Final Custody Order reiterating its custody decision and supplying detailed findings of fact and conclusions of law analyzing each of the statutory custody factors. The custody order[2] delineating the parties' periods of custody contained three appendices: (1) the "Code of Conduct" previously attached to the November 23, 2015 custody order; (2) a copy of certain provisions governing relocation pursuant to 23 Pa.C.S.A.§ 5337; and (3) an explanation of shared legal custody. Mother timely filed a notice of appeal on December 22, 2015, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother raises the following issues for our review:

> WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW IN ITS NOVEMBER 23, 2015 ORDER BY ORDERING THAT "THE CUSTODY ORDER RESULTING FROM THE CONFERENCE WITH [THE] CUSTODY MASTER...IS AFFIRMED AND SHALL BE FOLLOWED EFFECTIVE AS OF THE DATE OF THIS ORDER, A COPY OF WHICH IS ATTACHED"?
>
> WHETHER THE [TRIAL] COURT ERRED AND COMMITTED A GROSS ABUSE OF DISCRETION BY ENTERING TWO ORDERS BECAUSE THE ORDERS HAD DIFFERENT

---

[2] The December 10, 2015 custody order is almost identical to the master's proposed custody order, which the court had attached to its previous November 23, 2015 order.

APPENDICES, AND THE EXISTING TWO ORDERS COULD CREATE CONFUSION?

WHETHER THE [TRIAL] COURT ERRED AND COMMITTED A GROSS ABUSE OF DISCRETION BY ENTERING BOTH ORDERS WITH HOLIDAY SCHEDULES OF CUSTODY THAT SIMPLY ARE NOT PRACTICAL OR IN THE CHILD'S BEST INTEREST BECAUSE THE PARTIES LIVE IN DIFFERENT STATES AND HAVE APPROXIMATELY THREE HOURS OF TRAVEL TO PICK UP THE CHILD?

WHETHER THE [TRIAL] COURT ERRED IN APPLYING THE STATUTORY FACTORS OF CUSTODY.

(Mother's Brief at 7).

In reviewing a child custody order:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted).

For purposes of disposition, we address Mother's issues one through three together. In her first issue, Mother argues the trial court merely "rubber stamped" the custody master's recommendation, by entering an

order on November 23, 2015, affirming the master's recommendation for Father to have primary physical custody of Child, and attaching the master's proposed custody order. Mother asserts that Pennsylvania Rule of Civil Procedure 1915.4-3(a) permits a "hearing officer" (not a custody master) to preside over a non-record proceeding such as a conciliation conference or office conference, and to prepare a written order when the parties agree to a custody resolution. If no agreement is reached, Mother contends the "hearing officer" must notify the court that the matter should be listed for trial. Because the parties did not agree on a custody decision, Mother claims the master lacked authority to issue a recommendation, and the court similarly erred by "affirming" the master's proposed custody order.

In her second issue, Mother avers the trial court erred when it issued its final custody decision on December 10, 2015, because the court attached different appendices to this order than the one attached to the prior November 23, 2015 order. Mother insists the issuance of two orders in a custody case is not authorized by the rules, creates confusion, and erodes confidence in the judicial system.

In her third issue, Mother argues the trial court implemented an impractical holiday schedule. Mother emphasizes that the parties live approximately three hours apart, with Father residing in New York and Mother residing in Reading, Pennsylvania. Mother points out that the custody order gives her custodial time on Mother's Day from 10:00 a.m. to

7:00 p.m., and permits Father the same timeframe on Father's Day. Mother complains this schedule requires Child to travel six hours on each date, leaving at 7:00 a.m. and returning at 10:00 p.m. Mother suggests the trial court should have awarded Mother custodial time for Mother's Day weekend and Father custodial time for Father's Day weekend.

Mother submits the court should have addressed other holidays in a similar fashion. For example, Mother takes issue with the court's Christmas schedule awarding one parent custody from noon on December 24th until noon on December 25th and again from noon on December 29th until noon on the day before school commences; the other parent shall have custody from noon on December 25th until noon on December 29th. Mother complains this custody arrangement requires Child to travel three hours each day on December 24th and December 25th and requires each parent to travel six hours on one of those days. Mother claims the court's holiday schedule is not in Child's best interests, particularly due to the volume of traffic during the holidays. Mother also claims the court failed to take into consideration Child's best interests when formulating a weekly alternating custody schedule in the summer because Child could have activities during the summer. Mother maintains the court ignored the fact that Father previously enjoyed custody of Child for all of the summer when Mother had primary physical custody of Child. Mother suggests she should have custody of Child for 75% of the summer. Mother concludes the court's collective errors

constitute an abuse of discretion, and this Court must remand for further proceedings or adjust the parties' custodial periods during holidays and in the summer. We disagree.

Preliminarily, we observe generally that issues not raised in a Rule 1925 concise statement of errors will be deemed waived. *Lineberger v. Wyeth*, 894 A.2d 141 (Pa.Super. 2006). The Rule 1925 statement must be specific enough for the trial court to identify and address the issue(s) an appellant wishes to raise on appeal. *Id.* "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *Id.* at 148. If a concise statement is too vague, the court may find waiver and disregard any argument. *Id. See also In re L.M.*, 923 A.2d 505 (Pa.Super. 2007) (applying Rule 1925 waiver standards in family law context).

As well, appellate briefs must conform in all material respects to the briefing requirements in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. *See also* Pa.R.A.P. 2119 (stating argument shall be divided into as many parts as there are questions to be argued; and shall have at head of each part particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent). Where an appellant fails to raise or develop her issues on appeal properly, or where her brief is wholly inadequate to present specific issues for review, this Court will not consider the merits of the claims raised. *Butler v. Illes*, 747 A.2d

943 (Pa.Super. 2000). *See also Lackner v. Glosser*, 892 A.2d 21 (Pa.Super. 2006) (explaining arguments must adhere to rules of appellate procedure and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention); *Estate of Haiko v. McGinley*, 799 A.2d 155 (Pa.Super. 2002) (stating appellant must support each question raised by discussion and analysis of pertinent authority; absent reasoned discussion of law in appellate brief, this Court's ability to provide review is hampered, necessitating waiver on appeal).

Instantly, Mother presented her first issue on appeal in her concise statement as follows: "The [trial] court erred as a matter of law in its November 23, 2015 Order by ordering that 'the Custody Order resulting from the Conference with [the] Custody Master…is affirmed and shall be followed effective as of the date of this order, a copy of which is attached.'" (Mother's Rule 1925(a)(2)(i) statement, filed December 22, 2015, at 1). Significantly, Mother failed to state how or why the trial court erred; and the trial court did not address this issue in its Rule 1925(a) opinion.[3] Based on Mother's vague assertion of error in her concise statement, Mother's first issue is waived. *See Lineberger, supra*. Additionally, Mother cites no legal authority whatsoever to support her second and third issues. Mother's

---

[3] The trial court's Rule 1925(a) opinion adopted its December 10, 2015 Decision & Final Custody Order.

failure to develop these arguments with discussion and analysis of pertinent legal authority waives those issues on appeal.  ***See Lackner, supra***; ***Estate of Haiko, supra***; ***Butler, supra***.  Mother also failed to preserve her challenge to the court's summer schedule in her concise statement, so that claim is waived for this reason as well.  ***See Lineberger, supra***.

Moreover, regarding her first issue, Mother relies on Pa.R.C.P. 1915.4-3(a) (stating: "In those jurisdictions that utilize an initial non-record proceeding such as a conciliation conference or office conference, if no agreement is reached at the conclusion of the proceeding, the conference officer or conciliator shall promptly notify the court that the matter should be listed for trial").[4]  Nevertheless, Mother ignores the relevant local rules of civil procedure applicable in this case, which permit a "custody master" to file a recommended order when an agreement is not reached by the parties, and to submit findings of fact, conclusions of law, and a written report.  ***See*** B.R.C.P. 1915.26(a), (d), (g) (stating court shall refer all actions for custody, partial custody and visitation of minor children to custody master for purposes of conciliation conference; custody master may conduct informal hearing, take testimony, and hear position of parties relative to custody, partial custody, and visitation; if written settlement is not reached, custody master shall file recommended order; custody master may also file in its

---

[4] This rule does not refer to a "hearing officer," as Mother claims.

discretion findings of fact, conclusions of law, and written report). ***See also*** Pa.R.C.P. 1915.4-1, *Note* (explaining Berks County has certified to Domestic Relations Procedural Rules Committee that its custody proceedings **generally** are conducted in accordance with Pa.R.C.P. 1915.4-3). Further, the trial court held a *de novo* custody trial on November 20, 2015. Although the court agreed with the custody master's recommendation to award primary physical custody of Child to Father, nothing in the record supports Mother's assertion that the court merely "rubber stamped" the master's recommendation. Rather, the record makes clear the trial court issued detailed findings of fact and conclusions of law in support of its final custody order on December 10, 2015.

Concerning Mother's second issue, the court acknowledged that the custody trial took place less than a week before the Thanksgiving holiday. The court entered its initial custody decision on November 23, 2015, agreeing with the custody master's recommendation for Father to have primary physical custody of Child, attaching the custody master's proposed custody order, and supplying the "Code of Conduct" appendix. After the Thanksgiving holiday, the court issued its Decision & Final Custody Order on December 10, 2015, detailing its findings of fact and conclusions of law and analyzing each relevant custody factor. The December 10, 2015 custody order contained three appendices regarding "Code of Conduct," relocation, and shared legal custody. The record suggests the court wanted to give the

- 11 -

parties its custody decision before the Thanksgiving holiday, even though the court had not yet had an opportunity to explain its rationale;[5] and that the court inadvertently omitted two appendices from its November 23, 2015 order. The trial court was free to modify and expand on its initial custody order within thirty days, while the court still had jurisdiction. **See** 42 Pa.C.S.A. § 5505 (stating: "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed"). The November 23, 2015 and December 10, 2015 custody orders do not create confusion because they are virtually identical and the minor changes in the language used do not involve the parties' periods of custodial time.

With respect to Mother's third issue about the holiday schedule, Child would not be required to travel three hours on December 24th and December 25th every year, as Mother claims. For example, Child is not required to travel at all on December 24th in odd-numbered years because Child will already be in Father's custody and Father has custody of Child on December 24th in those years. The parties are also free to agree to more convenient custodial arrangements. (**See** Appendix A to Decision & Final Custody

_____

[5] Mother does not argue on appeal that the court erred by failing to issue its analysis of the relevant custody factors contemporaneous with the November 23, 2015 custody decision.

Order, dated December 10, 2015, at 1-2) (stating predetermined schedules are not written in stone and parties should be flexible for sake of child). Mother's mother and brother also reside in New York, not far from Father. Mother is free to exercise some of her custodial time in New York with her family. Therefore, Mother's first three issues on appeal are waived, but they would merit no relief in any event.

Turning to Mother's fourth issue, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable A. Joseph Antanavage, we conclude Mother's fourth issue merits no relief. The trial court's Decision & Final Custody Order comprehensively discusses and properly disposes of this issue. (**See** Decision & Final Custody Order, dated December 10, 2015, at 7-11) (examining each relevant factor under applicable statute; concluding award of primary physical custody of Child to Father is in Child's best interest).[6] Accordingly, Mother's first three issues are waived and would merit no relief in any event; and we affirm on the basis of the trial court's December 10, 2015 opinion regarding Mother's fourth issue.

Order affirmed.

_____

[6] In support of her fourth issue, Mother simply asks this Court to favor her testimony and the testimony provided by her witnesses. The trial court credited the testimony of Father and his witnesses, and we will not disturb those credibility determinations. **See S.J.S., supra**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2016

J.D.

Plaintiff

v.

J.J.

Defendant

: IN THE COURT OF COMMOM PLEAS
: OF BERKS COUNTY, PENNSYLVANIA
: CIVIL DIVISION
:
: CHILD CUSTODY
: NO. 15-2945
: ASSIGNED TO: ANTANAVAGE, J.

Decision & Final Custody Order                    December 10, 2015                    Antanavage, J.

## FACTUAL & PROCEDURAL HISTORY

J.D. ("Mother") and J.J. ("Father") both filed Complaints for Custody of their minor child N.J. ("Child") in March 2015. Mother's Complaint as Plaintiff was docketed at 15-2945 and Father's Complaint as Plaintiff was docketed at 15-3076. After some initial confusion regarding filings to the wrong docket, Father's Complaint was dismissed and Mother's earlier numbered docket was used going forward. The parties attended a Custody Conciliation Conference on May 15, 2015. Custody Master Molly B. Kleinfelter recommended a Custody Order that was entered by this Court on June 17, 2015 granting primary physical custody to Father and joint legal custody which was later rescinded due to the confusion of two outstanding docket numbers. Mother filed exceptions to the Recommendation of the Child Custody Master on July 10, 2015 and both parties were ordered to appear for a pre-trial conference with this Court on August 31, 2015. A custody trial was held on November 20, 2015 after which this Court entered an order on November 23, 2015 affirming the Custody Order resulting from the Conference with Custody Master.

1.

15

## DISCUSSION

Mother, age 28, is a single mother raising two children. One of the children is N.J., five. The other is a child fathered by a subsequent boyfriend. Mother works as a manager at a sneaker store in Reading, Pennsylvania. Mother is purported to reside on River Road, Reading, Berks County, Pennsylvania with her cousin yet Mother claims she lives with her aunt on Buttonwood Street, Reading, Berks County, Pennsylvania. It was unclear to this court where Mother resides as there was conflicting testimony about her true place of residence and with whom she lived with over the past few years. This causes the Court concern over the stability of her living arrangements.

Father, age 29, also has an infant son by his fiancé V.P. and lives with her and her eight year old son in Bronx, New York. Father works as a doorman in an office building in New York City and is attending night school to become an architect.

Mother and Father were never married but had a romantic relationship lasting approximately ten years before they separated. They lived together in New York City where Child was born in 2009. When Child ' was 1½ years old Mother and Father separated and Mother moved to Reading, Pennsylvania. Mother claims that the move was partly due to Father's physical abuse of her but Mother did not provide any convincing evidence that any abuse occurred. In fact, this Court found Father's testimony more credible that Mother was

2.

abusive toward Father. Fortunately, this Court found no evidence of any abuse or neglect to Child.

After Mother moved to Reading, she and Father had an informal custody arrangement and were able to co-parent in a civil manner for many years. Child spent time with each parent in their respective city and was able to enjoy family interactions with his aunt and cousins in Reading as well as his maternal and paternal grandparents in New York City. Father even made visits to Reading and spent time with Child at Mother's relatives' homes. However, once Child reached school age, the civil relationship between Mother and Father came to an end. Father testified that as time went on he had less and less access to his son because Mother was deliberately withholding Child from him. This may have been partially due to Child's new school schedule, the distance between the parties, and the fact that Mother has neither a car nor a driver's license. Yet, we also found credible Father's testimony that Mother is purposefully making custody exchanges more difficult than necessary due to her inflexibility and what she perceives as inconvenience for her. While distance is a complicating factor, Mother is the party who chose to relocate several hours from Father and thus she is now dealing with the consequences of such a long distance to travel when exchanging custody. We are also concerned with Mother's attempts to alienate Child from Father, the actions of which were highlighted in a disturbing video shown to this Court where Mother interrogated Child about what he and his Father had done during Father's last custodial period.

3.

Because of the distance between the parties, we are aware that by granting Father primary physical custody, *Child* will be transferring to a school in New York. This decision was not made lightly but we feel that Father is better able to provide a supportive and stable environment during the school year, especially as both Mother and Father expressed concerns that *Child* was possibly falling behind his peers in school. We believe that Father will continue to make his son's education his top priority as his past behavior demonstrates his commitment to his son's schooling. Currently, although Father lives several hours away, he is in close weekly contact with his son's current school, , to check on his educational progress. Father also enrolled *Child* in school in New York when Mother unexpectedly left *Child* with him for more than a month in February 2015 without reason since he was missing his classes in Reading. We are concerned about Mother's demonstrated lack of care for *Child*'s schooling as *Child* also missed school when Mother failed to pick him up for over a week in December 2014. Mother admits that Father is a good dad and is very involved in school activities with *Child*. We are also confident that of the two parties, Father is more likely to promote telephone contact with and Mother and Child while *Child* goes to school in New York than in the opposite scenario.

*Child* is in many ways a fortunate child to have such a large loving family on both his Mother's and Father's sides as evidenced by the relatives who provided testimony in this trial.

We sincerely hope that going forward Mother and Father will put their differences aside and focus solely on Chi ld's best interests rather than their own.

## Findings of Fact

1. Mother is J.D., age 28.

2. Mother also has another child with a man she is no longer dating, an alleged drug dealer. Mother testified that she knew he dealt drugs when they first met.

3. Father is J.J., age 29, residing in Bronx, New York 10468.

4. Father's testimony and evidence of his home depict a stable home environment.

5. Also residing with Father is his fiancé V.P., 32, V.P.'s son, J.G., 8, and Father and V.P.'s biological son M.J., 4 months.

6. V.P. works as a pharmacy technician at Walgreen's.

7. The parties are the biological parents of one minor child N.J., age 5, born in December 2009.

8. Child was born with one kidney larger than the other and see specialists at Hershey Medical Center for Pediatric Urology and for issues with his hearing.

9. Father alleges that while mother was pregnant with Child she attempted suicide by overdosing on pills. Mother denies this but Father presented two witnesses who testified to seeing Mother hospitalized which this Court found persuasive.

10. Mother is employed at the sneaker store Villa, on Penn Street in Reading, Pennsylvania and has an inconsistent work schedule.

11. Father is employed as a doorman for PBM at 250 Park Avenue in New York, New York. He is attending night school to become an architect.

12. Mother and father were in a relationship at the time of Child's birth but were never married. They resided in New York City at that time.

13. The parties separated in 2011 when Child was 1 ½ years old. Mother moved to Reading, Pennsylvania at that time.

5.

14. Upon separation the parties had an informal agreement regarding custody that seemed to work well until Child reached school age.

15. Once Child began pre-school, he began to live primarily with Mother during school months with Father's custody time growing increasingly less regular.

16. In December 2014, Mother failed to pick up Child at the designated time, causing him to miss school in Reading.

17. In February 2015, Mother failed to pick up Child at the designated time and Father was left with Child for over a month. Father enrolled Child in school in New York City at that point.

18. Father testified, and this Court found credible, that Mother restricts and interferes with and eavesdrops on phone conversations between Father and Child.

19. Mother videotaped herself interrogating Child after Father returned him from a custody period. This video was shown during trial and this Court found the Mother's actions to be disturbing and inappropriate.

20. Father testified, and this Court found credible, that Mother is only interested in custody arrangements that are convenient for her.

21. Father encourages the relationship between Mother and Child and purchased a tablet for Child that he can use to call his Mother whenever he wants.

22. Although Mother admits that Father is a good father, the Court finds that her actions are alienating Father from his son.

23. Mother alleges that Father physically abused her. Father denies this and claims that Mother is the aggressor. Mother previously filed for Protection from Abuse Orders that she withdrew or were dismissed.

24. Mother claims that Father attacked her as recently as Summer 2015 during a custody exchange in Reading. Father claims that Mother attacked him and his fiancé V·P. The police charged all parties with harassment but the charges were later dismissed. Based on the testimony during the custody trial, this Court finds it difficult to believe that Father was the first aggressor as Mother was seen entering Father's vehicle to attack V·P.

25. Father and Mother are capable of co-parenting to the extent that Child's last birthday party was attended by both sides of the family.

## Conclusions of Law

1. Actions in Child Custody are decided under the Pennsylvania Child Custody Act, 23 Pa.C.S.A. §5321 *et. seq.* and the decisional law that flows therefrom.

2. The Court has jurisdiction of the parties, the Children and the custody issues in this case. See 23 Pa.C.S.A. §5422

3. "It is axiomatic that the paramount concern in any child custody proceeding is the best interests of the child." Costello v. Costello, 446 Pa.Super. 371, 375, 666 A.2d 1096, 1098 (1995). Kirkendall v. Kirkendall, 844 A.2d 1261, 2004 Pa.Super 55 (2004) ("The best interests of the child is our bedrock in this determination.").

4. "Such a determination, made on a case-by-case basis, must be premised upon consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." Alfred v. Braxton, 442 Pa.Super. 381, 385, 659 A.2d 1040, 1042 (1995)(internal quotations omitted); Jackson v. Beck. 858 A.2d 1250, 1252 (Pa.Super. 2004).

5. The Child Custody Act enumerates sixteen factors that this Court must consider in determining whether to grant or deny any form of custody. See 23 Pa. C.S.A. §5328.

6. The Court is required to consider all the factors set forth in 23 Pa. C.S.A. §5328. See 23 Pa. C.S.A. §5328(a); JRM v. JEA, 33 A.3d 647, 652 (Pa.Super. 2011) ("*All* of the factors listed in §5328 are required to be considered").

### 23 Pa C.S.A. §5328

In reaching our decision as to primary physical custody of the Child, and after reviewing all the evidence presented at trial, we have carefully considered the factors set forth in the Pennsylvania Child Custody Act. We emphasize that we do not rely on any single factor in reaching our ultimate decision, but rather our decision is based on a totality of the circumstances and the cumulative effect of all relevant statutory factors, as set forth below:

1) Which parent is more likely to encourage and permit frequent and continuing contact between the child(ren) and another parent. This factor favors Father. Father has allowed Child to contact Mother whenever he wishes and purchased Child his own tablet with

7.

different apps he can use to video chat with Mother. Mother appears to interfere with Father's phone calls with Child when Mother has custody and has withheld visitation and phone contact. Mother seems to want a custody arrangement according to her convenience and not what is best or easiest for the Child.

2) The present and past abuse committed by a parent or member of the parent's household. This Court believes there is no abuse committed by either parent against Child. Mother has filed Protection from Abuse Orders against Father in the past but those were withdrawn by agreement. Father testified that Mother has been verbally and physically abusive with him. We believe that in some cases Mother was the aggressor and is not the completely innocent party she claims to be.

3) The parental duties performed by each parent on behalf of the child(ren). This factor favors Father. Both Father and Mother provide financially for the Child. Prior to Mother seeking child support Father sent Mother money and paid for half of Child's school tuition. Mother has recently fallen behind in making tuition payments for Child's school. Both parties appear to love the Child and adequately care for him while he is in their charge, helping him learn how to read and meeting his basic needs. Although Child is currently enrolled in school in Reading, Father is in weekly contact with his son's school to make sure he is doing well.

4) The need for stability and continuity in the child(ren)'s education, family life and community life. This factor favors Father. Father offers a more stable and consistent routine as he has his own residence and is more stable financially. This Court is not convinced as to where Mother resides and there is a concern that Child's schooling in Reading would be interrupted if Mother continues to fall behind on tuition bills. Mother also disrupted Child's education on two occasions when she failed to pick Child up from Father in New York – once for a period of one week, another for a period of one month.

5) The availability of extended family. Both Mother and Father have a large group of extended family in Reading and New York City that the Child would be able to see

8.

during different custodial periods. Both paternal and maternal grandparents reside in New York City.

6) The child(ren)'s sibling relationships. Father and 〝 √.የ. 〟 testified that Child and his soon to be step-brother J.G. are best friends and do everything together. Child's half-brother by Father is only four months old and at this point their interaction is limited by age. The age of Mother's other child is unclear but we believe it is also an infant.

7) The well-reasoned preference of the child(ren), based on the child(ren)'s maturity and judgment. The Child is only six and therefore unable to express a well-reasoned preference. The Court did not interview the Child and the Child was not present at trial.

8) The attempts of a parent to turn the child(ren) against the other parent. This factor favors Father. There was no evidence presented at trial that Father has attempted to turn Child against Mother however it does appear that Mother attempts to turn child against Father. Mother videotaped herself interrogating the Child and asking him what he and his father had done.

9) Which parent is more likely to maintain a loving, stable, consistent and nurturing relationship with the child(ren) adequate for the children's emotional needs. This factor favors Father. We believe that Father is better able to provide and maintain a loving, stable, consistent and nurturing relationship with Child. Father provided evidence of the activities he does with his son and while this Court is not swayed by pictures of Father and Child attending professional sporting events, it is important that Father spends most of his free time with Child and his older step brother. As previously mentioned, this Court is concerned with Mother's living arrangements and the people Mother is involved with, namely the father of her infant son who she admitted dealt drugs. There was also inconsistent testimony about the Child's daily routine with Mother claiming she took the Child to school most mornings and Mother's Cousin testifying that she took the Child to school every day.

10) <u>Which parent is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child(ren).</u> Both parents share a concern and commitment to Child's health and both are capable of attending to the Child's developmental needs. However, as previously discussed, Mother has disrupted Child's educational needs by causing him to miss school on several occasions.

11) <u>The proximity of the residences of the parents.</u> Mother and Father live several hours apart. As Mother is the party who initiated the move to Reading, we are unsympathetic with her complaints regarding distance to travel to exchange child for custody visitation.

12) <u>Each parent's availability to care for the child(ren) or ability to make appropriate child-care arrangements.</u> Both parties appear capable of arranging alternative child care when they are personally unable to care for Child such as daycare. Father has purposefully included Mother's parents when he needed child care in the past so they could spend time with their grandchild. Father testified that when he cannot personally watch Child his fiancé does. Mother relies on daycare and her extended family.

13) <u>The level of conflict between the parents and the willingness and ability of the parents to cooperate with one another.</u> This factor favors Father. In the past Father and Mother showed they are capable of co-parenting but this seems to have broken down in the past year. It is difficult for the parties to coordinate with the distance between them and Mother's lack of transportation. Mother does not seem to be as flexible as Father in terms of custody arrangements.

14) <u>The history of drug or alcohol abuse of a parent or member of a parent's household.</u> This factor favors Father. There was no evidence of drug or alcohol abuse by either Mother or Father. We are concerned about the father of Mother's infant son and his involvement in drug dealing.

15) <u>Mental Health of the parents.</u> This factor favors Father. There was no evidence of Father having any mental health issues. Mother allegedly attempted suicide which she

10.

denied but the Court found Father's witnesses credible that she was in fact hospitalized after the attempt.

(16)<u>Any other relevant factor</u>. None.

11.

J·D·

Plaintiff

v.

J·J·

Defendant

: IN THE COURT OF COMMOM PLEAS
: OF BERKS COUNTY, PENNSYLVANIA
: CIVIL DIVISION
:
:
: CHILD CUSTODY
: NO. 15-2945
: ASSIGNED TO: ANTANAVAGE, J.

### Final Custody Order

AND NOW, this 10th day of December, 2015 it is hereby Ordered and Decreed as follows:

1) **LEGAL CUSTODY:**    J·D· , , "Mother" and    J·J· ,

"Father" shall have shared legal custody of the minor child,    N·J   , born in

December   2009.

2) **PHYSICAL CUSTODY**: The parties shall exchange physical custody of the minor child as follows:

a) Father shall have primary physical custody of the minor child.

b) Mother shall have partial physical custody of the minor child as the parties may agree, but at a minimum:

i) During the school year, every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m. In the event that there is a day off from school on either Friday or Monday on Mother's weekend, the weekend shall be extended to include the day/s off.

ii) During the summer, commencing the first Sunday after the last day of school, the parties shall rotate custody on a weekly basis. Custody shall be exchanged Sunday at noon.

3) **HOLIDAYS**: The following holiday schedule shall take precedence over the regular holiday schedule set forth in Paragraph 2:

  a) **Minor Holidays:** The parties shall share custody on the following holidays: Easter, Memorial Day, July Fourth, Labor Day, and Thanksgiving, as they shall agree. In the even they cannot agree, the parties shall alternate each holiday. Father shall begin with Memorial Day in 2015, and the parties shall alternate the holidays thereafter. Custody shall be from 6:00 p.m. the day before the holiday until 7:00 p.m. on the day of the holiday, except for July Fourth which shall be from 10:00 a.m. on the fourth until noon on the fifth of July. The parties shall equally divide any spring break from school.

  b) **Mother's Day/Father's Day:** Mother shall have custody for Mother's Day and Father shall have custody for Father's Day each year. Custody shall be from 10:00 a.m. until 7:00 p.m.

  c) **Christmas:** The parties shall share custody for the Christmas holiday with one parent having custody from NOON on December 24th until NOON on December 25th and again from December 29th at NOON until the day before school commences at NOON. The other parent shall have custody NOON on December 25th until NOON on December 29th. Mother shall have custody from Christmas Eve to Christmas morning time period in even-numbered years; Father shall have custody from Christmas Eve to Christmas morning time periods in odd-numbered years.

4) **VACATION:** The parties shall exercise their summer vacation during their normal custodial weeks. Vacation time shall not interfere with the other party's weekend or holiday time. The parties agree that when they take the minor child places other than Pennsylvania or New

York they shall provide the other party with the address and phone number where the child can be located.

5) **REASONABLE TELEPHONE CONTACT:** On the days that the non-custodial parent has no physical custody of the minor child, the non-custodial parent shall have reasonable telephone contact with the minor child. The parent having custody shall ensure that the child is aware of any missed calls and returns any missed call as soon as possible. Neither party shall use Caller ID, Call Block or any other device or service which limits telephone access to the child. In the event that a minor child has a cell phone, the non-custodial parent may use the child's cell phone to contact the minor child. Except during school hours, the child's cell phone will be available to the child from 7:00 a.m. until 8:00 p.m. for the minor child to make and accept calls from the non-custodial parent. Neither parent shall take the child's cell phone as punishment without first discussing the punishment with the other parent, so that the parties can ensure that telephone access to the child is not compromised.

6) **EXTRACURRICULAR ACTIVITIES AND HOMEWORK:** All parties shall ensure that child's homework is completed on time. In the event that any extra-curricular activity is scheduled during Mother's period of partial custody, except in cases of emergency, Mother shall ensure that the child attends. Neither party shall schedule an extra-curricular activity or appointment on or during the other party's custodial time without prior consent.

7) **TRANSPORTATION:** Unless otherwise agreed, the party commencing their period of custody shall be responsible for picking up the minor child from the other party.

8) **FINAL ORDER:** This Order shall be considered a Final Order resolving the issues raised in the Complaint filed on March 12, 2015.

9) **RELOCATION:** If you are planning to relocate with the child and your relocation will significantly impair any other party's exercise of their custodial rights, you are obligated to provide a detailed notice and counter-affidavit by certified mail, return receipt requested to all individuals who have custody rights to the child at least 60 days in advance of the proposed relocation in compliance with 23 Pa. C.S.A. Section 5337.

10) **CHILDREN IN THE MIDDLE:** Mother shall complete the "Children in the Middle" program and provide proof of completion to the Custody/Support Master within thirty (30) days of the date of this Order if she has not already done so per the Master's order.

11) The attached appendix shall be made part of the within Order.

BY THE COURT:

A. Joseph Antanavage, JUDGE

DISTRIBUTION
Prothonotary (original)
Kathleen D. Dautrich, Esq.
Eric M. Gibson, Esq.

RECEIVED PROTHONOTARY'S OFFICE
2015 DEC 11 A 10: 26
BERKS COUNTY, PA
MARIANNE B. SUTTON
PROTHONOTARY

## APPENDIX A TO CUSTODY ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on all parties. Violation of any of these rules could become the subject of contempt proceedings before this Court, or could be grounds for modification of this Order. Custody orders are civil court orders and are not enforceable by police or other law enforcement. The word "child" is used below, but these rules apply to all the children in the Order. If any of these general rules conflict with any specific provisions of the Order, the Order shall control.

1. In addition to the rights in the Order, all parties shall also have the following rights with respect to the child:

A. The right to reasonable telephone contact with the child when they are in the other party's custody.

B. The right to be fully informed concerning the progress of the child in school and the child's medical status, including the right to obtain information directly from the child's school or medical practitioner.

C. The right to be informed in advance before any important decision is made concerning the child and the opportunity to participate in those decisions.

2. In the event of any serious illness of the child at any time, the party then having custody of the child shall immediately communicate with the other parties by telephone or by any other means, informing the other parties as to the nature of such illness. During such illness, each party shall have the right to visit the child as he or she desires consistent with the proper medical care of the child.

3. None of the parties shall alienate or permit an attempt by anyone else to alienate the child from the other parties. While in the presence of the child none of the parties shall make any remarks or do anything which is derogatory or uncomplimentary to the other parties and it shall be the duty of each party to uphold the other parties as ones the child should respect and love.

4. Both parties shall provide each other with the addresses and telephone numbers of where they will be staying anytime they take a trip with the child out of the jurisdiction of Berks County in excess of three (3) days.

5. The parties shall not conduct arguments or heated conversation in the presence of the child or when the child can overhear the argument.

6. The parties shall at all times consider the child's best interests, and act accordingly. It is in a child's best interest for the parties to understand that the child is trying desperately to cope with the fact of his or her parents' separation, and needs help in loving both parents and any other involved parties.

7. Neither party shall question the child as to the personal life of any other party except insofar as necessary to insure the personal safety of the child. By this we mean that the child will not be used as a spy on any other party. It is harmful to a child to be put in the role of spy.

Rev. 2-15-12

8. The parties should remember that they cannot teach the child proper moral conduct if that party is indulging in improper conduct. Children are quick to recognize hypocrisy, and the party who maintains a double standard will lose the respect of the child.

9. Weekend and evening custody shall be subject to the following general rules:

A. Arrangements should be worked out beforehand between the parties without forcing the child to make choices and run the risk of displeasure. However, the child shall be consulted as to their schedules when appropriate.

B. Custodial rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other parties and to the needs and desires of the child.

C. If a party finds himself or herself unable to pick up or drop off the child at the designated or agreed to time, he or she should give immediate notice to the other parties to avoid subjecting the child to unnecessary worry or failed expectations.

D. The party having custody of the child should prepare them both physically and mentally for the transfer of custody to another party and should have them available at the time and place designated in the Order or mutually agreed upon.

E. If any party or the child has plans which conflict with their scheduled custodial time and they wish to change their custodial time, the parties should make arrangements for an adjustment acceptable to the schedules of every one involved. Predetermined schedules are not written in stone, and the parties should be flexible for the sake of the child.

F. If a party shows up to begin their custodial time with the child and the party is under the influence of alcohol or drugs, the custodial time may be considered forfeited on those grounds alone.

10. If any party feels that another party has violated this Order, they may petition the Court as set forth in Pa.R.C.P. 1915.12.

# APPENDIX B

Any Party to this action shall comply with the Provisions of 23 Pa. C.S.A. §5337 pertaining to a change in the residence as follows:

General Rule – No relocation shall occur unless:

(1) every individual who has custody rights to the child consents to the proposed relocation; or

(2) the court approves the proposed relocation.

(c) Notice.—

(1) The party proposing the relocation shall notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given no later than:

    (i) the 60th day before the date of the proposed relocation, or

    (ii) the 10th day after the date that the individual knows of the relocation, if:

        (A) the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60-day notice; and

        (B) it is not reasonably possible to delay the date of relocation so as to comply with the 60-day notice.

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

    (i) The address of the intended new residence.

    (ii) The mailing address, if not the same as the address of the intended new residence.

    (iii) Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

    (iv) The home telephone number of the intended new residence, if available.

    (v) The name of the new school district and school.

    (vi) The date of the proposed relocation.

    (vii) The reasons for the proposed relocation.

    (viii)A proposal for a revised custody schedule.

    (ix) Any other information which the party proposing the relocation deems appropriate.

(x) A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

(xi) A warning to the nonrelocating party that if the nonrelocating party does not file with the court an objection to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.

(4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

(d) Objection to proposed relocation.—

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocating. The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not. If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a counter-affidavit in substantially the same form:

This proposal of relocation involves the following child/children:

| Child's Name | Age | Currently residing at: |
|---|---|---|
| Child's Name | Age | Currently residing at: |
| Child's Name | Age | Currently residing at: |

I have received a notice of proposed relocation and

1.___ I do not object to the relocation and I do not object to the modification of the custody order consistent with the proposal for revised custody schedule as attached to the notice.

2.___ I do not object to the relocation, but I do object to modification of the custody order, and I request that a hearing be scheduled:

    a.___ Prior to allowing (name of child/children) to relocate.
    b.___ After the child/children relocate.

3.___ I do object to the relocation and I do object to the modification of the custody order, and I further request that a hearing be held on both matters prior to the relocation taking place.

I understand that in addition to checking (2) or (3) above, I must also file this notice with the court in writing and serve it on the other party by certified mail, return receipt requested. If I fail to do so within 30 days of my receipt of the proposed relocation notice, I shall be foreclosed from objecting to the relocation.

2

# Appendix "C"

## EXPLANATION OF "SHARED LEGAL CUSTODY"

Legal custody of the child/children shall be shared by the parties. This means that each party shall have an equal right, to be exercised jointly with the other party, to make all major non-emergency decisions affecting the child/children's general welfare including, but not limited to, all decisions regarding the child/children's health, education and religion, and/or social and moral development. All parties shall be entitled to full participation in all educational and medical/treatment appointments, evaluations and/or medical tests with regard to the minor child/children.

Each party shall be entitled to have full access to all records, documents and information pertaining to the child/children including, but not limited to, medical, dental, religious and school records, birth certificates and other governmental records. To the extent that one party has possession of any such records, documents or information, that party shall be required to share the same, or copies thereof, with the other party within such reasonable time as to make the records and information of reasonable use to the other party (for example, school notices shall be given in advance of the activity about which the notice is written).

Each party shall be entitled to receive copies of any notices that come from the child/children's school with regard to all school activities, extracurricular activities, sporting events, children's parties, musical/theatrical presentations, orientation sessions, parent-teacher conferences and other similar notices or information.

A copy of the attached Custody Order and this Appendix shall be deemed sufficient to authorize any medical/dental providers, educational institution and or governmental agency to release any and all information or records pertaining to said child(ren) to either or both parents upon request.